| | |
|---|---|
| EVANSTON INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>C9SS f/k/a Cloud 9 VAPOR, LLC, and ALANNA BRIDGERS,<br><br>Defendants. | **EVANSTON INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR DEFAULT JUDGMENT AGAINST C9SS F/K/A CLOUD 9 VAPOR, LLC AND ALANNA BRIDGERS** |

Pursuant to Federal Rule of Civil Procedure 55, Evanston Insurance Company ("Evanston") files this memorandum in support of its motion for default judgment against C9SS f/k/a Cloud 9 Vapor, LLC ("C9SS") and Alanna Bridgers.[1] In support of its motion, Evanston states as follows:

## STATEMENT OF THE CASE

In this lawsuit, Evanston seeks a declaration that it has no duty to defend or indemnify C9SS under Commercial General Liability Policy No. 2CZ5614, effective August 17, 2017 to August 17, 2018 (the "Policy") in connection with a lawsuit, captioned *Alanna Bridgers v. Cloud 9 Vapor, LLC,* Case Number 19-CVS-10681 (the "Bridgers Action"). Alanna Bridgers was named as a nominal party in interest to this case solely for purposes of binding her to any resulting judgment. The Bridgers Action asserts that Ms. Bridgers sustained bodily injuries when allegedly defective batteries sold by C9SS exploded in a vaping device on her lap. (ECF 1.) After C9SS tendered the Bridgers Action to Evanston seeking coverage under the Policy, Evanston disclaimed

---

[1] C9SS was formerly known as Cloud 9 Vapor LLC and is liable for the acts or omissions of Cloud 9. (ECF 1, ¶4.)

coverage and instituted this insurance coverage lawsuit because, among other things, the Policy excludes coverage for liability arising out of products sold by C9SS. (ECF 1, ¶ 26.)

C9SS was served with the complaint and summons in this case on November 6, 2019. (ECF 16.) C9SS's answer to the complaint was due November 27, 2019, twenty-one days after service. FED. R. CIV. P. 12(a)(1). Between November 2019 and January 2020, C9SS received multiple extensions of time to respond to the complaint but never filed a responsive pleading. (*See* ECF 9, 11; 17-1, ¶8.) Because C9SS did not answer or otherwise plead to the complaint, on Evanston's request, the Clerk entered a default against C9SS on March 9, 2020. (ECF 19.)

Ms. Bridgers executed a waiver of service that was sent on February 11, 2020. (ECF 18.) Ms. Bridgers answer to the complaint was due on April 11, 2020. (*Id.*) Because Ms. Bridgers did not answer or otherwise plead to the complaint, on Evanston's request, the Clerk entered a default against Ms. Bridgers on May 20, 2020. (ECF 21).

Evanston now seeks entry of default judgment against C9SS and Bridgers because, based on the admitted facts, the Policy expressly excludes coverage for damages arising out of products sold by C9SS and occurring away from a Designated Premises. [2] (ECF 1.)

## STATEMENT OF ADMITTED WELL-PLED FACTS

I. **The Evanston Insurance Policy Excludes Coverage for Damages Arising out of the Sale of Products by C9SS.**

The Policy's Declarations Page expressly provides that "Products/Completed Operations" is "Excluded," as follows:

---

[2] As stated above, Evanston seeks no affirmative relief from Ms. Bridgers other than to bind her to the outcome of this insurance coverage dispute. (ECF 18.)

2

4840-7000-4673ase 5:19-cv-00495-BO   Document 24   Filed 06/24/20   Page 2 of 9

| LIMITS OF INSURANCE | |
|---|---|
| General Aggregate Limit (other than Products/Completed Operations) | $2,000,000 |
| Products/Completed Operations Aggregate Limit | $Excluded |
| Personal and Advertising Injury Limit | $1,000,000 Any One Person or Organization |
| Each Occurrence Limit | $1,000,000 |
| Damage to Premises Rented to You Limit | $100,000 Any One Premises |
| Medical Expense Limit | $5,000 Any One Person |

(ECF 1, ¶ 27.) Consistent with the elimination of "Products/Completed Operations" coverage from the limits of insurance, the Policy's "Products-Completed Operations Hazard" exclusion (the "products exclusion"), precludes coverage for "bodily injury" included in the "products-completed operations hazard." (*Id.*, ¶¶ 31-35.) The "products-completed operations hazard" is defined to include "bodily injury" "occurring away from premises you own or rent" and arising out of "your product." "Your product" is defined to include "any goods or products … manufactured, sold, handled, distributed or disposed of by" C9SS. "Your product" also includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product'" and the "providing of or failure to provide warnings or instructions."

## II. The Policy Also Excludes Coverage for Bodily Injury that Does Not Involve the Use of a Designated Premises.

Additionally, the Policy contains an endorsement entitled "Designated Premises or Project Limitation" (the "premises endorsement"). (ECF 1, ¶ 41.) The premises endorsement limits coverage to "bodily injury," "property damage," "personal and advertising injury," and "medical expenses" arising out of the ownership, maintenance, or use of designated premises. (*Id.*, ¶ 42.) The designated premises are: (1) 4205 Wake Forest Road, Ste. 201, Raleigh North Carolina; (2) 4607 Fayetteville Road, Raleigh, North Carolina; and 3) 12516 Capital Boulevard, Ste. 103, Wake Forest, North Carolina. (ECF 1, ¶ 44.)

### III. The Bridgers Action arises out of the sale of the Insured's Product, LG Batteries, and the use and injury occurred away from a Designated Premises.

In the Bridgers Action, Ms. Bridgers alleges that a C9SS salesperson recommended that she purchase two "LG HG2 batteries" (the "LG batteries") for use in a vaping device, described as a "Smok mod." (*Id.*, ¶ 16.) Bridgers alleges that when she purchased the LG batteries from C9SS, they were sold to her loose without packaging, instructions, or warnings, written or otherwise. (*Id.*, ¶¶ 17-18.) Bridger alleges that C9SS knew, or should have known, that the LG batteries were not intended for use in vaping devices, but that C9SS sold them to her anyway. (*Id.*, ¶¶ 19-20.) Bridgers also alleges that C9SS mishandled, tampered with, or damaged the LG batteries and that the LG batteries were inherently dangerous, unsafe, or defective in a number of ways. (*Id.*, ¶¶ 21-22.) Bridgers alleges that after she left C9SS, she was injured when the LG batteries failed and exploded when she attempted to use the Smok mod. (*Id.*, ¶ 24.)

The Policy limits coverage to premises that C9SS owns, rents or occupies, but the Bridgers Action does not allege the location where the LG batteries were sold to Bridgers. (*Id.*, ¶ 45.) In addition, the Bridgers Action alleges that the injuries took place in Bridgers' vehicle away from any store premises. (*Id.*, ¶ 46.) Further, the Bridgers Action does not allege that any injuries arose from the "ownership, maintenance or use of" any Designated Premises. (*Id.*, ¶ 47)

## ARGUMENT

### I. Entry of a Default Judgment Is Proper Because C9SS and Bridgers Have Failed to Respond to the Complaint.

Rule 55 authorizes entry of a default judgment against a properly-served defendant that fails to timely file a responsive pleading. FED. R. CIV. P. 55(b). Upon the clerk's entry of default, the defaulted party is deemed to have admitted all well-pleaded allegations of fact contained in the complaint, and the court's inquiry becomes whether the facts alleged state a claim. *DIRECTV,*

*Inc. v. Rawlins*, 523 F.3d 318, 329 (4th Cir. 2008); *Hampshire Ins. Co. v. Royster*, 5:16-CV-106-BO, 2017 WL 1378120, at *2 (E.D.N.C. Apr. 12, 2017).

Ms. Bridgers executed a waiver of service, but failed to respond to the complaint. Additionally, and despite proper service and two extensions of time, C9SS has not responded in any way to the complaint. Therefore, under Rule 55, all well-pleaded allegations of fact are deemed admitted, and as set forth below, entry of default judgment is proper.

## II. The Admitted Facts Establish that Evanston Has No Duty to Defend or Indemnify C9SS in the Bridgers Action.

The Federal Declaratory Judgment Act allows a federal court to declare the rights, obligations and liabilities of parties to a contract. 28 U.S.C. § 2201. A declaration of rights under an insurance policy is an appropriate subject for a declaratory judgment action. *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004). In turn, federal courts commonly enter declarations of rights under an insurance policy through a default judgment under Federal Rule of Civil Procedure 55. *See, e.g.*, *Hampshire Ins. Co. v. Royster*, 5:16-CV-106-BO, 2017 WL 1378120, at *2 (E.D.N.C. Apr. 12, 2017) (entering default and declaring no coverage). *See also Pennsylvania Natl. Mut. Cas. Ins. Co. v. Castillo*, 3:18-CV-00271-GCM, 2019 WL 1332380, at *5 (W.D.N.C. Mar. 25, 2019) (entering default judgment and declaring that the insurer had no duty to defend or indemnify the insured); *Allstate Ins. Co. v. Frost*, 316CV00134RJCDSC, 2018 WL 1175230, at *2 (W.D.N.C. Mar. 6, 2018) (entering default and finding no coverage).

### A. The Products Exclusion Precludes Coverage because the Bridgers Action Arises from the Sale of LG Batteries, the Insured's Product.

In North Carolina, the interpretation of an insurance policy provision is a question of law. *See Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.,* 276 N.C. 348, 172 S.E.2d 518, 522 (1970). Where the terms of the policy are plain and unambiguous, a court will enforce the contract according to its terms. *Id.*

Fourth Circuit federal courts have deemed unambiguous exclusions precluding coverage for claims involving products or completed operations in other contexts. For example, in *Beretta U.S.A. Corp. v. Fed. Ins. Co.*, 17 Fed. Appx. 250, 252 (4th Cir. 2001) (unpublished) (applying Maryland law), the Fourth Circuit Court of Appeals determined that a "Products Completed Operations" exclusion substantively identical to the one in this case precluded coverage for lawsuits seeking to recover damages arising from the sale of guns. In *ABT Bldg. Prod. Corp. v. Nat'l Union Fire Ins. Co. Of Pittsburgh*, 472 F.3d 99, 118 (4th Cir. 2006) (applying North Carolina law), the court enforced an exclusion that precluded coverage for "Property Damage to Your Product." The court held that the exclusion precluded damages sought for the cost of repairing or replacing the insured's own siding product.

An almost identical "products-completed operations" exclusion was also applied by another jurisdiction in a case with similar facts, involving injuries caused by an exploding e-cigarette battery. *See Atlas Ins. Co. v. Ohana Enterprises,* 2017 WL 5569857 (W.D. Wash. 2017) (holding that batteries sold by insured were "products" and that the "products-completed operations" exclusion precluded coverage when batteries exploded in his pocket, causing burns to his lower body).

Here, the products exclusion precludes coverage for "bodily injury" that (1) occurs away from premises C9SS owns or rents and (2) arises out of products sold by C9SS. (ECF 1, ¶32-35.) As in the cases above, the admitted facts establish the basis for Evanston's request for declaratory judgment based on the products exclusion because the Bridgers Action alleges bodily injury that occurred off of any premises owned by C9SS and arising from the allegedly defective LG batteries sold by the insured, C9SS. (ECF 1, ¶36-38.)

6
4840-7000-4673 Case 5:19-cv-00495-BO   Document 24   Filed 06/24/20   Page 6 of 9

The Bridgers Action alleges that C9SS sold the LG batteries to Bridgers. (ECF 1, ¶16.) The Batteries constitute "your product" as defined by the Policy because they are goods or products "sold, handled, distributed or disposed of by" C9SS. (ECF 1, ¶38.) In turn, Bridgers alleges that she sustained injuries from the LG batteries she purchased from C9SS when she was off the premises of C9SS. (ECF 1, ¶24, 38.) As such, the products exclusion precludes coverage for the Bridgers Action, and this Court may enter a default judgment in Evanston's favor.

### B. The Designated Premises Exclusion Also Precludes Coverage Because the Injuries Did Not Occur at a Designated Premises.

Additionally, the Policy contains an endorsement entitled "Designated Premises or Project Limitation" (Form No. MEGL 0217 05 16) (the "premises endorsement"). (*Id.*, ¶ 41.) The premises endorsement limits coverage to "bodily injury," "property damage," "personal and advertising injury," and "medical expenses" arising out of the ownership, maintenance, or use of designated premises. (*Id.*, ¶ 42.) While Evanston is not aware of any North Carolina case law construing this exclusion in a similar context, the premises exclusion has been enforced to limit coverage to premises liability risks occurring only at a specified physical location. *See, e.g.*, *First Specialty Ins. Corp. v. Mississippi State Univ.*, 355 Fed. Appx. 815, 816–17 (5th Cir. 2009) (policy limited coverage for injuries occurring at the specified premises and did not include product liability coverage for products sold by the insured and related property damage); *Doucet v. Darwin Select Ins. Co.*, 210 So. 3d 794 (La. 2017) (finding no coverage under policy limiting coverage to designated premises for an injury to an employee of the insured that did not occur at one of the locations scheduled).

As in the above precedent, this is not a typical premises liability case involving an injury on the insured's property. The Bridgers Action does not allege that the incident took place at a designated location; rather, the Bridgers Action alleges that the injuries took place in Bridgers'

7

4840-7000-4673 Case 5:19-cv-00495-BO   Document 24   Filed 06/24/20   Page 7 of 9

vehicle away from any store premises.  (ECF 1, ⁋ 46-47.)  As such, Bridgers seeks damages for injuries that did not arise out of the ownership, maintenance, or use of a designated premise as required by the premises endorsement.  For this additional and independent reason, entry of a default judgment is proper.

## CONCLUSION

For the foregoing reasons, Evanston respectfully requests that the Court enter a default judgment against C9SS and Alanna Bridgers, deeming all allegations in the complaint admitted, and finding and declaring that Evanston has no duty to defend or indemnify C9SS in the Bridgers Action.

This the 24th day of June, 2020.    EVANSTON INSURANCE COMPANY

By: /s/ JODI S. GREEN
Jodi S. Green
Nicolaides Fink Thorpe Michaelides Sullivan LLP
626 Wilshire Boulevard, Suite 1000
Los Angeles, CA 90017
T: (213)-402-1248
jgreen@nicolaidesllp.com

/s/ MONICA T. SULLIVAN
Monica T. Sullivan
Nicolaides Fink Thorpe Michaelides Sullivan LLP
10 South Wacker Drive, Suite 2100
Chicago, IL 60606
T: (312) 585-1400
msullivan@nicolaidesllp.com

/s/ JENNIFER A. WELCH
Local Civil Rule 83.1(d) Counsel for Defendant
Jennifer A. Welch
NC State Bar No. 31360
Cranfill Sumner & Hartzog LLP
5420 Wade Park Boulevard LLP
Raleigh, NC 27607
T: (919) 828-5100
F:  (919) 828-2277
jwelch@cshlaw.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

WESTERN DIVISION
Civil Action No. 5:19-CV-495-BO

| | |
|---|---|
| EVANSTON INSURANCE COMPANY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) **CERTIFICATE OF SERVICE** |
| C9SS, INC. f/k/a CLOUD 9 VAPOR, LLC, and ALANNA BRIDGERS, | ) ) ) ) |
| Defendants. | ) |

I hereby certify that on June 24, 2020, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to:

> Jeffrey R. Monroe
> Miller Monroe & Plyler, PLLC
> jmonroe@millermonroe.com

The following were served by depositing a copy of the same in the United States Mail postage prepaid and addressed to:

> Alanna Bridgers
> 7315 Krume Court, Apt 1225
> Raleigh, NC 27613-7197
>
> Wolfgang Mueller
> 41850 W. Eleven Mile, Ste 101
> Novi, MI 48375
> wolf@wolfmuellerlaw.com

BY: /s/ JENNIFER A. WELCH
N.C. State Bar No. 31360
CRANFILL SUMNER & HARTZOG LLC
Attorneys for Plaintiff
Post Office Box 27808
Raleigh, North Carolina 27611-7808
Telephone: (919) 828-5100
Facsimile: (919) 828-2277
E-mail: jwelch@cshlaw.com